## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

T.T. INTERNATIONAL CO., LTD.,

        Plaintiff,

v.

BMP INTERNATIONAL INC.,
BMP USA, INC., and XIANBIN
MENG

        Defendants.

## COMPLAINT

Plaintiff T.T. International Co., Ltd. sues Defendants, BMP International, Inc., BMP USA, Inc., and Xianbin "Ben" Meng, and alleges:

### NATURE OF THE ACTION

1. This is an action under Sections 726.105 and 726.106, Florida Statutes, for relief against transfers in fraud of T.T. International, a creditor of BMP International and BMP USA (together, the "BMP Companies"), to pierce the corporate veil, and to hold Xianbin Meng—President, CEO, and ultimate beneficial owner of both companies—personally liable for their debts.

2. T.T. was the Plaintiff in an action against BMP International and BMP USA in the Middle District of Florida, Tampa Division, styled *T.T. International Co., Ltd. v. BMP International, Inc.*, Case No. 8:19-CV-2044-CEH-AEP

("Lawsuit").  Following a trial, on March 6, 2023, the Court entered judgment for T.T. in the amount of $17,616,549.74 against BMP International and $71,165,915.64 against BMP USA (together, the "Judgments").  Since the entry of the Judgments, interest continues to accrue at a rate of $2,227.04 per day against BMP International and $8,996.60 per day against BMP USA.

3.      In the Lawsuit, T.T. sought to recover (a) over $14 million of refrigerants, cylinders, and related products that T.T. shipped to BMP International at Meng's request; and (b) over $58 million of refrigerants, cylinders, and related products that T.T. shipped to BMP USA at Meng's request.  The BMP Companies accepted those goods but failed to pay T.T. for them.

4.      Meng founded, controlled, and was the sole shareholder of both BMP Companies.

5.      Rather than respect their corporate form and ensure that BMP International and BMP USA could and did pay their debts, Meng caused the BMP Companies to order goods from T.T., not pay for them, and then transfer valuable assets to himself, persons with whom he had or has close personal relationships, and other companies under his control.

6.      In 2021—while the Lawsuit was pending—Meng directed his then trial counsel to incorporate a new company, iGas Holdings, Inc., of which Meng

was the President, CEO, and sole shareholder.  Meng then transferred all his stock in BMP USA and BMP International to this new corporation.

7.      By effecting these transfers, Meng intentionally removed assets from BMP USA and BMP International as part of his efforts to avoid the BMP Companies having to pay T.T. what it is owed under the Judgments.

8.      Instead of paying the companies' outstanding debts, Meng used the assets of the BMP Companies for his own personal benefit.

9.      While the Lawsuit was pending—and BMP International and BMP USA owed T.T. a total of over $74 million before interest—Meng paid millions of dollars to corporate officers, who are identified in filings with the Florida Division of Corporations as himself and his ex-wife.

10.     Meng also caused BMP International and BMP USA to pay his personal expenses, including, for example, maintenance for personal residences.

11.     Meng operated BMP International and BMP USA as his personal "piggy banks"—even while the companies owed over $74 million to T.T.

**THE PARTIES**

12.     Plaintiff T.T. is a company organized under the laws of the People's Republic of China with its principal place of business in Dalian, China.

13.     Defendant BMP International is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

14.     Defendant BMP USA is a Florida corporation with its principal place of business in Tampa, Florida.  Thus, it is a Florida citizen.

15.     Defendant Xianbin Meng is a United States citizen who maintains his primary residence in Florida.  Thus, he is a Florida citizen.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and it is between the citizens of a State and a citizen of a foreign state.

17.     T.T. seeks declaratory relief in Counts III and IV, below.  As an actual controversy exists and this Court has diversity jurisdiction, it has jurisdiction over these Counts under the Declaratory Judgment Act, 23 U.S.C. § 2201.

18.     This Court has personal jurisdiction over BMP International because it is a citizen of Florida.

19.     This Court has personal jurisdiction over BMP USA because it is a citizen of Florida.

20.     This Court has personal jurisdiction over Xianbin Meng because he is a citizen of Florida.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because BMP International, BMP USA, and Meng reside in this judicial district, and a

substantial part of the events or omissions giving rise to the claims in this action occurred here.

## FACTUAL ALLEGATIONS

22.     T.T. is a trading company that purchases and subsequently sells refrigerants, cylinders, and related products from China.   T.T. often sells to importers in countries such as the United States.   T.T. does not maintain any offices, employees, or agents within the United States.   Nor does T.T. itself import products into the United States.

23.     BMP International and BMP USA are companies that, among other things, imported or import refrigerants, cylinders, and related products to the United States.

24.     At all material times, the BMP Companies were and are controlled, in whole or in part and directly or indirectly, by Xianbin Meng, whose primary residence is in the Tampa Bay area.

**A.     BMP International and BMP USA failed to pay for goods ordered and received at Meng's direction.**

25.     In or around August 2012, T.T. began shipping refrigerant and related goods to BMP International after Meng personally placed orders for them.

26.     In or around June 2015, T.T. began shipping refrigerant and related goods to BMP USA.   Again, Meng personally requested these shipments.

27.     Beginning about March 2015, T.T. shipped goods to BMP International and BMP USA on an open account basis.  The invoices provided that Defendants were to remit payment within 60 days.

28.     But Meng caused BMP International and BMP USA to fail to pay the full amounts due and to fall behind in their payments to T.T.

29.     By the end of 2015, the BMP Companies owed to T.T. a total of about $38 million.

30.     Over the next three years, Meng continued to order more goods from T.T. for BMP International and BMP USA and caused the companies to make payments totaling less than the cost of those goods.  Consequently, the BMP Companies' debts to T.T. continued to increase.

31.     Throughout the nearly six-year relationship between the BMP Companies and T.T., Meng was the President, CEO, and primary representative of both companies.  Thus, Meng was responsible for placing orders, directing payments, and communicating with T.T.

32.     In or around July 2018, Meng informed T.T. that he was ending the parties' business relationship.

33.     T.T. subsequently demanded that the BMP Companies pay their outstanding balances in full.  At the end of the relationship, BMP International and BMP USA owed T.T. a total of over $70 million.

34.     In or around November 2018, Meng caused BMP International and BMP USA to stop making payments to T.T.  At the time, their combined debt to T.T. still exceeded $70 million.

35.     By the end of 2018, Meng stopped using BMP International and BMP USA to sell refrigerant to customers, at least in part because of legal troubles facing both companies.

36.     After settlement discussions failed between T.T. and Meng—acting on behalf of BMP International and BMP USA—T.T. filed the Lawsuit to recover the amounts that the BMP Companies owed to it.

37.     The Lawsuit proceeded to trial in August and September 2022.  And on February 3, 2023, the Court issued its Opinion and Order finding BMP International and BMP USA liable for unjust enrichment and fixing the damages at the full amounts sought by T.T.

38.     The Clerk of Court issued the Judgments against BMP International and BMP USA on March 6, 2023.

39.     To date, neither BMP company has paid any of the amounts owed.

**B.     Meng dominated and controlled both BMP International and BMP USA to such an extent that the corporations' independent existence was non-existent.**

40.     In or about 2007, Meng founded BMP International as its sole shareholder and officer.

41.     Meng testified at a deposition in the Lawsuit, "BMP is the Ben Meng Project.  It's my name."

42.     Meng later added a second officer for BMP International, his then-wife Linna Shi.  Ms. Shi was listed on company records as Vice President, but Meng inexplicably testified that she was not involved in the business.

43.     In or about 2013, Meng then founded BMP USA as its sole shareholder.

44.     Again, Meng was listed as President on company records, and Ms. Shi was the only other officer listed.  And once more, Meng claimed Ms. Shi, as Vice President, had no role in the business.

45.     Meng stated that he was the sole individual at BMP International and BMP USA who could decide when and how much to order from T.T. and when and how much to pay to T.T.

46.     Meng also owned and completely controlled many other companies as either the sole owner or the member, with only his ex-wife also listed on the Florida Division of Corporations' website.  These companies included LM Supply, Inc. and 8105 Anderson, LLC.

47.     Meng caused these companies and others to transfer or otherwise provide funds or other assets to BMP USA and BMP International for no or inadequate consideration.

48.     For instance, 8105 Anderson, LLC owned the warehouse where at all material times BMP International and BMP USA were and are located.  But BMP International and BMP USA paid no rent because Meng claimed the warehouse was "owner occupied" even though neither of the BMP Companies owned the property.

49.     As another example, Meng caused LM Supply to import refrigerant gases he knew to be risky, such as R-421A.  LM Supply then transferred the imports to BMP USA for no or inadequate consideration.  When LM Supply faced regulatory scrutiny and lawsuits by private parties relating to these imports, Meng stopped using the company and left it with no assets.

**C.**     **Meng secreted assets in companies he dominated and controlled and in bank accounts belonging to himself and his family.**

50.     As BMP International and BMP USA faced mounting pressure from the Lawsuit and ultimately the Judgments totaling over $85 million with interest, Meng secreted assets from T.T. or attempted to place them beyond the reach of the BMP Companies' judgment creditor in at least three ways.

51.     First, Meng created yet another company he owned and controlled, iGas Holdings, Inc., and transferred to it the stock of BMP USA and BMP International.  iGas Holdings then purported to receive the BMP Companies' most valuable assets: import allowances from the Environmental Protection Agency worth millions of dollars.

52.     Second, Meng transferred funds or other assets, such as refrigerants and equipment, from one or both the BMP Companies to iGas USA, Inc., a company in which he both owned a majority interest and controlled.  Meng also transferred additional BMP Companies' funds or other assets to other companies he controlled, such as Cool Master USA, Inc. for no or inadequate consideration.

53.     Third, Meng transferred remaining funds or other assets of BMP USA and BMP International to himself and individuals he had a close personal relationship with also for no or inadequate consideration.

54.     For instance, Meng claimed on a 2023 podcast that he paid his corporate officers millions of dollars.

55.     However, the only corporate officers listed on documents on the Florida Division of Corporations' website are Meng and his ex-wife.

56.     Accordingly, Meng apparently paid out millions of dollars to himself and those with whom he had or has a close personal relationship.

57.     Meng also used the corporate bank accounts of BMP International and BMP USA as his own personal accounts.

58.     And Meng used corporate funds to pay personal expenses such as property maintenance for a personal home.

59.     Other fraudulent or otherwise improper transfers likely occurred as well.  However, because of Meng's efforts to secret, transfer, or otherwise place

assets beyond the reach of T.T., it is not presently possible for T.T. to know the full extent of Defendants' wrongful conduct.  Thus, T.T. expects pretrial discovery to reveal additional funds or other assets that Meng stripped from the BMP Companies, with no or inadequate consideration, to benefit himself, companies that he controlled, and those with whom he had or has a close personal relationship at the expense of those companies' creditors.

60.    T.T. has engaged Greenberg Traurig, P.A. to represent it and is obligated to pay the firm reasonable fees for its services.

61.    All conditions precedent to the commencement of this action and the granting of the relief requested have occurred, have been satisfied, or have been waived.

## COUNT I
### Fraudulent Transfer of Assets
### by BMP International and Xianbin Meng

62.    T.T. incorporates the allegations in paragraphs 1 through 61.

63.    At Meng's direction, BMP International transferred funds and other assets to Meng with the actual intent to hinder, delay, or defraud T.T. in its efforts to collect on its Judgment in the Lawsuit and with the intent to render BMP International judgment proof.

64.    BMP International's and Meng's fraudulent intent is evidenced by multiple "badges of fraud," including those described in the following paragraphs.

65.     BMP International transferred its assets to an insider: its president, CEO, and ultimate beneficial owner,[1] Xianbin Meng; companies that he controlled; and others with whom Meng had or has a close personal relationship.

66.     Both BMP International and Meng have known of the Lawsuit since it was filed in 2019.  Indeed, Meng is, among other things, the registered agent for BMP International.  Thus, all asset transfers from BMP International to or on behalf of Meng or those with whom he had or has a close personal relationship following the filing and service of the Lawsuit were made with knowledge of the amounts that BMP International owed to T.T.

67.     The badges of fraud described in the preceding paragraphs, along with others to be established through discovery, demonstrate a clear intent by Meng and BMP International to transfer or conceal the company's assets in an effort to keep them outside the reach of its judgment creditor, T.T., including through transfers to Meng, companies that he controlled, and those with whom he had or has a close personal relationship.

68.     Meng caused BMP International to make those transfers to benefit himself, companies that he controlled, and those with whom he had or has a close

---

[1]     As discussed above, Meng was the sole shareholder of BMP International until 2021, when Meng transferred his shares to iGas Holdings.  Meng is the sole shareholder of iGas Holdings, so he remains the ultimate beneficial owner of BMP International.

personal relationship when the company lacked sufficient assets or income to pay its debts.

69.     Meng and BMP International intended to render the company judgment proof from T.T. through, among other things, the transfers and other conduct described above and other conduct to be revealed in pretrial discovery.

70.     Regardless, Meng and BMP International rendered the company unable to pay its debts, in part through the conduct described above and other conduct that will be subsequently identified.

WHEREFORE, T.T. demands (1) judgment against BMP International and Meng for monetary damages; (2) the appointment of a Receiver for BMP International until T.T. has been fully compensated; (4) an injunction against further disposition of assets without Court approval; and (5) any other relief that is necessary to protect T.T.'s rights and interests.

### COUNT II
### Fraudulent Transfer of Assets
### by BMP USA and Xianbin Meng

71.     T.T. incorporates the allegations in paragraphs 1 through 61.

72.     BMP USA transferred cash and other assets to Xianbin Meng and those with whom he had or has a close personal relationship with the actual intent to hinder, delay, or defraud T.T. in its efforts to collect on an eventual judgment in the Lawsuit and with the intent to render BMP USA judgment proof.

73.     BMP USA's and Meng's fraudulent intent is evidenced by multiple "badges of fraud," including those described in the following paragraphs.

74.     BMP USA transferred its assets to an insider: its President, CEO, and ultimate beneficial owner,[2] Meng; companies that he controlled; and those with whom he had or has a close personal relationship.

75.     Both BMP USA and Meng have known of the Lawsuit since it was filed in 2019.  Indeed, Meng is the registered agent for BMP USA.  Thus, all asset transfers from BMP USA to Meng, companies that he controlled, or those with whom he had or has a close personal relationship following the filing and service of the Lawsuit were made with full knowledge of the amounts BMP USA owed to T.T.

76.     The badges of fraud described in the preceding paragraphs, along with others to be established through discovery, demonstrate a clear intent by Meng and BMP USA to transfer or conceal the company's assets to keep them outside the reach of its judgment creditor, T.T., including through transfers to Meng, companies that he controlled, and those with whom he had or has a close personal relationship.

---

[2]     As discussed above, Meng was the sole shareholder of BMP USA until 2021, when Meng transferred his shares to iGas Holdings.  Meng is the sole shareholder of iGas Holdings, so he remains the ultimate beneficial owner of BMP USA.

77.     Meng caused BMP USA to make these transfers to benefit himself, companies that he controlled, and those with whom he had or has a close personal relationship when the company lacked sufficient assets or income to pay its debts.

78.     Meng and BMP USA intended to render the company judgment proof from T.T. through, among other things, the transfers and other conduct described above and other conduct that will be subsequently identified.

79.     Regardless, BMP USA and Meng rendered BMP USA unable to pay its debts in part through the transfers described above and others that will be subsequently identified.

WHEREFORE, T.T. demands (1) judgment against BMP USA and Meng for monetary damages; (2) the appointment of a Receiver for BMP USA until T.T. has been fully compensated; (4) an injunction against further disposition of assets without Court approval; and (5) any other relief that is necessary to protect T.T.'s rights and interests.

### COUNT III

**Piercing the Corporate Veil of BMP International
to Hold Xianbin Meng Liable for Its Debts**

80.     T.T. incorporates the allegations in paragraphs 1 through 61.

81.     Meng dominated and controlled BMP International, such that the company's independent existence was in fact non-existent, and Meng was the alter ego of the corporation.

82.     Meng used the corporate bank account to pay expenses for himself and those with whom he had or has a close personal relationship, including maintenance on residential property.

83.     Meng also was also the sole officer who had the power to and did in fact decide orders from and payments to BMP International's creditors, including T.T.

84.     In fact, the only corporate officer besides Meng was his ex-wife, who Meng inexplicably testified had no authority or role in the corporation.

85.     Meng was also the only shareholder of BMP International until he transferred its stock to iGas Holdings, Inc., a corporation that he created while the Lawsuit was pending and at all material times he wholly owned.

86.     Meng also used the corporate form fraudulently and for improper purposes, including unjustly enriching himself and defrauding creditors such as T.T.

87.     Meng intended to and did in fact use BMP International to incur liabilities and then transfer assets from the company, leaving it unable to pay its debts.

88.     Meng has admitted that he stopped selling goods from BMP International at least in part because of its liabilities.  In fact, Meng has had a pattern of engaging in similar conduct with other companies he controlled.

89.     Meng also removed funds or other assets from BMP International to enrich himself and those with whom he had or has a close personal relationship while BMP International owed millions of dollars to T.T.

90.     At least as late as May 2023, Meng continued to cause BMP International to import goods into the United States, despite it having no customers and owing T.T. millions of dollars.

91.     On information and belief, BMP International transferred those goods to other companies under Meng's control for no or inadequate consideration, which then sold the goods and retained the proceeds without any payment to BMP International.

92.     Meng has caused BMP International to transfer funds or other assets to himself, companies that he controls, or those with whom he had or has a close personal relationship rather than pay the over $14 million in principal that it owes T.T. for goods that the company ordered, received, and retained or sold at Meng's direction.

93.     Thus, this fraudulent, improper use of the corporate form has directly and materially harmed T.T.

WHEREFORE, T.T. seeks a declaratory judgment that Xianbin Meng is liable for the debts of BMP International.

## COUNT IV

### Piercing the Corporate Veil of BMP USA
### to Hold Xianbin Meng Liable for Its Debts

94.     T.T. incorporates the allegations in paragraphs 1 through 61.

95.     Meng dominated and controlled BMP USA, such that the company's independent existence was in fact non-existent, and Meng was the alter ego of the corporation.

96.     Meng used BMP USA's bank account to pay expenses for himself, other companies that he controlled, and those with whom he had or has a close personal relationship, including maintenance on residential property.

97.     Meng also was the sole officer who had the power to and did in fact decide orders from and payments to certain creditors, including T.T.

98.     In fact, the only officer of BMP USA besides Meng was his ex-wife, who Meng inexplicably testified had no authority or role in the corporation.

99.     Meng was also the only shareholder of BMP USA until he transferred its stock to iGas Holdings, a corporation that he created while the Lawsuit was pending and at all material times he wholly owned.

100.     Meng also used the corporate form fraudulently and for an improper purpose, including unjustly enriching himself and defrauding T.T.

101.     Meng intended to and did in fact use BMP USA to incur liabilities and then to remove assets from the company, leaving it unable to pay its debts.

102.   Meng admitted that he stopped selling goods from the company at least in part because of its liabilities.  In fact, Meng has had a pattern of engaging in similar conduct with other companies he controlled.

103.   Meng removed funds or other assets from the company to benefit himself, other companies that he controlled, and those with whom he had or has a close personal relationship while BMP USA owed millions of dollars of debt to T.T.

104.   As of at least December 2022, Meng continued to cause BMP USA to import goods into the United States, despite it having no customers and owing T.T. millions of dollars.

105.   On information and belief, BMP USA transferred those goods to other companies that Meng controlled for no or inadequate consideration, which then sold the goods and retained the proceeds without any payment to BMP USA.

106.   Meng has caused BMP USA to transfer funds or other assets to himself, companies that he controls, or those with whom he had or has a close personal relationship rather than pay the over $58 million in principal that it owes T.T. for goods that the company ordered, received, and retained or sold at Meng's direction.

107.   Thus, this fraudulent, improper use of the corporate form has directly and materially harmed T.T.

WHEREFORE, T.T. seeks a declaratory judgment that Xianbin Meng is liable for the debt BMP USA owes it.

[Attorney's Signature Appears on Following Page]

Dated:  December 11, 2023       Respectfully submitted,

*/s/ David B. Weinstein*
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Irina Khasin (FBN 1050729)
irina.khasin@gtlaw.com
Christopher White (FBN 1022219)
whitech@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 East Kennedy Blvd., Suite 1900
Tampa, Florida 33602
(813) 318-5700 - telephone
(813) 318-5900 - facsimile